Rel: June 28, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2023-2024

_____

## CR-2023-0282

_____

## Christopher Sandon Ramirez

## v.

## State of Alabama

## Appeal from Montgomery Circuit Court
## (CC-20-35)

McCOOL, Judge.

Christopher Sandon Ramirez appeals his convictions for driving while under the influence of a controlled substance ("DUI"), see § 32-5A-191(a)(3), Ala. Code 1975; and possession of drug paraphernalia, see § 13A-12-260, Ala. Code 1975.  The Montgomery Circuit Court sentenced

Ramirez to one year of incarceration in the Montgomery County jail for his DUI conviction and to six months of incarceration in the Montgomery County jail for his possession-of-drug-paraphernalia conviction. Those sentences were suspended, and Ramirez was placed on supervised probation for two years.

<u>Facts and Procedural History</u>

In January 2020, Ramirez pleaded guilty in the Montgomery District Court to DUI and possession of drug paraphernalia, and he appealed to the Montgomery Circuit Court for a trial de novo. At that trial, the State's evidence tended to establish the following facts.

Cpl. Nina Knapp of the Montgomery County Sheriff's Office testified that, at approximately 1:50 a.m. on June 9, 2019, she initiated a traffic stop of the car Ramirez was driving. The reason for the traffic stop was that Ramirez was "pulling a trailer with no tag." (R. 33.) When Cpl. Knapp approached Ramirez, she noticed that he "looked like he just ran a marathon," that he "was perspiring far more than any man should have been perspiring at the time," and that he was "just drenched." (R. 34.) Cpl. Knapp also noticed that Ramirez's pupils were dilated and that there was no "pupillary response" when she shined a flashlight in his

2

eyes, which, according to her, indicated that he was "under the influence of a stimulant." (R. 35.) Cpl. Knapp asked Ramirez to get out of his car, which he willingly did, and she then conducted various field-sobriety tests, including the "walk-and-turn test" (R. 39), which Ramirez failed, and the "one-leg-stand test" (R. 43), which "showed three of the four clues of impairment" when Ramirez attempted the test. (R. 45.) Based on his performance in those tests, Cpl. Knapp believed that Ramirez was under the influence of a controlled substance and arrested him. When conducting an inventory of Ramirez's car following his arrest, Cpl. Knapp found "on the driver's side floorboard" "a pipe commonly used to ingest narcotics." (R. 48.) Cpl. Knapp subsequently obtained a search warrant authorizing her to collect a sample of Ramirez's blood, which she executed approximately two hours after initiating the traffic stop. That blood sample was sent to the Department of Forensic Sciences ("DFS") for testing, which revealed that there was "methamphetamine and amphetamine in Ramirez's blood." (R. 65.)

## Discussion

Ramirez raises two claims on appeal that, he says, require reversal of his convictions. We address each claim in turn.

3

I.

Ramirez argues that, pursuant to Rule 18.4, Ala. R. Crim. P., the circuit court erred "when it proceeded to strike a jury … without the minimum number of prospective jurors present." (Ramirez's brief, p. 9.)

Rule 18.4(f)(1), Ala. R. Crim. P., states, in relevant part:

"After voir dire examination of the prospective jurors has been completed and challenges for cause have been exercised, the court shall cause to be compiled a list of names of prospective jurors who are competent to try the defendant, from which list the jury shall be obtained. … Unless the parties consent to the use of a lesser number, the number of names appearing upon the list shall be not less than:

"….

"(iii) Eighteen (18), if the offense charged is a misdemeanor."

Rule 18.4(g), Ala. R. Crim. P., which governs alternate jurors, states, in relevant part:

"(1) Number and qualifications. The court may in its discretion qualify such alternate jurors as it deems necessary, except that in capital cases the court shall qualify at least two (2) alternate jurors, as required by law. ….

"….

"(3) Strike List. If the court determines … that one (1) or more alternate jurors should be selected in a noncapital case, then, unless the parties consent to the use of a lesser number, the minimum number of names required by

4

subsection (f)(1) shall be increased by two (2) for each alternate juror to be selected …."

Ramirez was charged with two misdemeanor offenses, and the circuit court chose to provide one alternate juror. Thus, pursuant to Rule 18.4, the circuit court was required to ensure that the parties had at least 20 prospective jurors from which to select a jury, unless the parties consented to a lesser number. However, the parties in this case selected their jury from only 19 prospective jurors, and Ramirez contends that neither he nor the State "consented to proceeding with less than the minimum number required by Rule 18.4."[1] (Ramirez's brief, p. 12.) Thus, Ramirez argues that he is entitled to a new trial based on the circuit court's failure to comply with Rule 18.4.

Ramirez concedes that he did not raise this claim below, but he argues that "the minimum number of jurors to strike a petit jury should be considered jurisdictional." (Ramirez's brief, p. 14.) In support of that argument, Ramirez points to the fact that Rule 18.4 contains "mandatory language" regarding the number of prospective jurors that a trial court

---

[1]We question whether this contention is correct because nothing in Rule 18.4 requires that the parties expressly consent to a waiver of the rule's requirements. However, as will become clear, we need not address that issue.

must make available to the parties. (Ramirez's brief, p. 14.) However, as Ramirez notes, Rule 18.4 expressly states that the parties may consent to a number of prospective jurors that is less than the minimum required by the rule, i.e., that they may waive the minimum number, and this Court has held that "statutes or rules that are written in 'mandatory' terms but that are capable of being waived are not 'jurisdictional.'" Hall v. State, 223 So. 3d 977, 981 (Ala. Crim. App. 2016). Thus, we reject Ramirez's argument that the requirements of Rule 18.4 are jurisdictional, and, because this claim is not jurisdictional, Ramirez may not raise it for the first time on appeal. See Moultrie v. Wall, 172 So. 3d 828, 844 (Ala. 2015) (refusing to consider a claim that had been raised for the first time on appeal because the claim was not jurisdictional).

## II.

Ramirez argues that the circuit court erred by admitting the analysis of his blood sample by the DFS ("the DFS report"), which indicated that there was methamphetamine and amphetamine in his blood at the time of the traffic stop. In support of that argument, Ramirez contends that the admission of the DFS report without the testimony of the person who performed the analysis violated the Confrontation Clause

6

of the Sixth Amendment to the United States Constitution. We conclude,

however, that this claim is also not properly before this Court.

Section 12-21-300, Ala. Code 1975, states:

"(a) In any criminal case, or juvenile or family court case which is of a criminal nature, the prosecuting authority may offer a certificate of analysis as described below, in lieu of direct testimony. The court shall receive as evidence the certificate of analysis from any of the following:

"(1) A person performing an analysis or examination in any laboratory operated by the Alabama Department of Forensic Sciences or authorized by the department to conduct an analysis or examination of the type performed.

"(2) A person performing an analysis or examination in any criminalistics laboratory established pursuant to federal law.

"(b) To be admissible pursuant to this section, a certificate of analysis shall contain all of the following:

"(1) The date and time the evidence was delivered to the facility.

"(2) The name of the person making the delivery, and the name of the person receiving the delivery.

"(3) A brief description of the evidence.

"(4) The type of examination or analysis requested.

7

"(5) The name of the person making the examination or analysis.

"(6) The date or dates of the examination or analysis.

"(7) The results of the examination or analysis.

"The certificate of analysis shall give the name and address of the facility in which the examination or analysis was made, and it shall be signed by and sworn to as true and correct, under penalty of law, by the person making the examination or analysis."

Section 12-21-301, Ala. Code 1975, states:

"The party seeking to introduce a certificate of analysis shall not less than 40 days prior to the commencement of the hearing or trial, give written notice to all parties of intent to offer proof by a certificate of analysis. The notice shall include a copy of the certificate of analysis."

Section 12-21-302(a), Ala. Code 1975, states:

"The party against whom the certificate is offered may request, not later than 30 days prior to the commencement of the hearing or trial, a hearing to show cause why a subpoena should be issued for cross-examination of the person who performed the examination or analysis."

In Brown v. State, 939 So. 2d 957 (Ala. Crim. App. 2005), Mark Lynn Brown raised the same argument that Ramirez has raised, i.e., that the circuit court erred by "admitting into evidence a certificate of analysis from the [DFS] regarding the nature of the substances found in his house,

8

because, [Brown] sa[id], admission of the certificate violated his right to confrontation." Id. at 958. Brown had received notice of the State's intent to introduce the certificate of analysis more than five months before his trial began, but

> "he did not file a written request 30 days before trial for a hearing to show cause why a subpoena should be issued for the forensic scientist. Instead, Brown waited until after the trial had begun … and then objected to the certificate of analysis on the ground that its admission would violate his right to confrontation."

Id. at 960. Thus, this Court refused to address Brown's Confrontation Clause claim, stating that,

> "[b]ecause Brown did not comply with § 12-21-302 by challenging the certificate of analysis at least 30 days before trial, his objection to the certificate after the trial began was untimely; therefore, the issue of the admissibility of the certificate of analysis is not properly before this Court for review."

Brown, 939 So. 2d at 961.

In this case, the State filed in the district court notice of its intent to introduce the DFS report "in lieu of direct testimony." (C. 54.) That notice was filed in August 2019, more than three years before Ramirez's March 2023 trial in the circuit court. However, there is no indication in the record that Ramirez ever requested "a hearing to show cause why a

9

subpoena should be issued for cross-examination of the person who performed the examination or analysis," § 12-21-302(a), much less that he did so at least 30 days before his trial began. Instead, Ramirez waited until the State proffered the DFS report at trial to raise his Confrontation Clause claim. Thus, as this Court did under the same circumstances in Brown, we hold that "the issue of the admissibility of the [DFS report] is not properly before this Court for review." Brown, 939 So. 2d at 961.

We acknowledge Ramirez's argument that the State's notice in the district court was not sufficient to comply with the 40-day notice required by § 12-21-301. According to Ramirez, "once [he] filed his notice of appeal for a trial de novo, … the slate was to be wiped clean." (Ramirez's brief, p. 30.) Thus, Ramirez argues, "[i]f the slate is wiped clean, no filing in the district court should determine the procedure in the circuit court." (Id., pp. 31-32.) In other words, Ramirez argues that, once he appealed to the circuit court for a trial de novo, the State was required to refile the notice of its intent to introduce the DFS report in lieu of direct testimony. And, because the State did not refile that notice, Ramirez argues that he had no duty to comply with § 12-21-302 and that he "believed that the

State would call the witness" who performed the analysis of his blood sample. (Ramirez's brief, p. 34.)

We are not persuaded by Ramirez's argument. First, Ramirez has not cited any authority that required the State to refile its notice in the circuit court. Regardless, although it is true that a trial de novo "provides a defendant with a clean slate with regard to a determination of whether he or she is guilty of the offense charged," Woods v. State, 261 So. 3d 491, 494 (Ala. 2016), "an appeal for a trial de novo does not mean that the slate is thrown away." Woodruff v. State, 347 So. 3d 281, 287 (Ala. Crim. App. 2020) (emphasis and citation omitted). As noted, before Ramirez pleaded guilty in the district court, the State provided him with notice of its intent to introduce the DFS report in lieu of direct testimony, and that report was clearly important evidence for the State, as it confirmed Cpl. Knapp's suspicion that Ramirez was under the influence of a controlled substance at the time of the traffic stop. Indeed, Ramirez concedes that the DFS report "provided a necessary element the State had the burden to prove." (Ramirez's reply brief, p. 18.) Thus, Ramirez should have certainly anticipated, once he received the State's notice, that the State would seek to introduce the DFS report into evidence if his case ever went

11

to trial, whether that trial occurred in the district court, the circuit court, or both.

The purpose of § 12-21-301 is to provide a party with advance notice that the opposing party intends to introduce a certificate of analysis in lieu of direct testimony from the person who performed the analysis. The State provided Ramirez with such notice in the district court, and, having received that notice, there was no logical reason for Ramirez to believe that the State would not rely on the DFS report in his trial de novo in the circuit court. Thus, we conclude that the State satisfied the 40-day notice required by § 12-21-301, which triggered Ramirez's obligation to comply with § 12-21-302(a). Because Ramirez failed to comply with that obligation, we adhere to our conclusion that he failed to preserve this claim for appellate review.[2] Brown, supra.

_____

[2]Ramirez suggests that, if our analysis of this issue

"is followed to its logical conclusion (that all papers filed in district court are deemed filed in circuit court), [then] circuit courts would be overloaded with pre-trial matters in nearly every trial de novo. If true that all papers are deemed filed in circuit court when the clerk submits them, then any notice or motion is deemed filed and must be ruled upon. For example, every motion filing -- whether it be suppression, dismissal, more definite statement, etc. -- a defendant made in the district court would need to be set for a hearing."

12

<u>Conclusion</u>

The claims Ramirez has raised on appeal were not properly preserved for appellate review. Thus, Ramirez is not entitled to relief from his convictions, and, as a result, the judgment of conviction is affirmed.

AFFIRMED.

Windom, P.J., and Kellum, Cole, and Minor, JJ., concur.

---

(Ramirez's brief, p. 30.) However, we are not concerned in this case with the types of motions that Ramirez has cited (or even any motions), and we have not concluded that "all papers in district court are deemed filed in circuit court." Rather, we are concerned in this case with only the notice required by § 12-21-301, and that is all we have addressed.